IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| KEVIN PORTER, | ) | |
| | ) | No. 31805-2-III |
| Appellant, | ) | (cons. with No. 31809-5-III) |
| | ) | |
| v. | ) | |
| | ) | |
| NATHANIEL (NATE) BOISSO, | ) | |
| PERSONAL REPRESENTATIVE OF | ) | PUBLISHED OPINION |
| THE ESTATE OF CHARLES BOISSO, | ) | |
| | ) | |
| Respondent. | ) | |

SIDDOWAY, C.J. — A creditor of a decedent's estate who is notified by the

personal representative of rejection of his claim is required by Washington's nonclaim

statute to bring suit within 30 days, failing which his claim is forever barred. RCW

11.40.100. The statute provides that the personal representative's notification of rejection

"must advise the claimant that the claimant must bring suit in *the proper court* against the

personal representative within thirty days." *Id.* (emphasis added). These consolidated

cases involve a creditor's claim filed in a Kittitas County probate that was dismissed

because the holder of the claim filed his post-rejection lawsuit in the Superior Court for

Pierce County. They call on us to decide the meaning of "the proper court" for a post-

rejection suit.

We hold that to the extent Kevin Porter's claims for relief asserted in his Pierce County action were subject to the nonclaim statute (and some were not), "the proper court" in which to assert them was the superior court. His action, which was transferred to Kittitas County on Mr. Porter's own motion for change of venue, should not have been dismissed nor should the Kittitas County court have quieted title to the real property that was at issue in Charles Boisso's estate. We reverse several orders and the final judgments entered in both matters and remand for proceedings consistent with this opinion.

FACTS AND PROCEDURAL BACKGROUND

On November 13, 2012, Kittitas County granted letters of administration for the probate of the estate of Charles Boisso. Kevin Porter filed notice of a creditor's claim in the probate action several weeks later, on December 17. His notice alleged that he had entered into a contract to purchase two one-half-acre parcels of property owned by the late Mr. Boisso, located in Pierce County; that the agreed purchase price had been $120,000; and that he had, since 1999, paid a total of $116,900. He asked that upon his payment of the balance owed the estate deliver to him a statutory warranty deed.

The estate rejected Mr. Porter's claim on December 31. Its notice of rejection stated that "[p]ursuant to RCW 11.40.100, you must bring suit in the proper Court against the Personal Representative within thirty days after the date of the postmark of the

2

mailing of this Notice, and that otherwise your claim will be forever barred." Clerk's Papers (CP) (No. 318095) at 5.

On January 29, 2013, Mr. Porter filed suit in Pierce County. He would later explain that he did so because his claim involved real property located in Pierce County and he was concerned with a series of Washington decisions that construed RCW 4.12.010, which governs the county in which many actions involving real property "shall be commenced," as jurisdictional. The cases "continually affirmed that RCW 4.12.010 governs jurisdiction affecting local actions and that local actions commenced in the wrong county must be dismissed." *Ralph v. State Dep't of Natural Resources*, 182 Wn.2d 242, 267, 343 P.3d 342 (2014) (Wiggins, J., dissenting) (citing cases). After briefing in this appeal was completed, our Supreme Court decided *Ralph*, in which a five-member majority overruled that line of cases, holding that RCW 4.12.010(1) prescribes only venue, not jurisdiction. *Ralph*, 182 Wn.2d at 259.

Mr. Porter's Pierce County complaint disclosed the Kittitas County probate, his creditor's claim, and the estate's notice of rejection. It described the terms of his alleged purchase agreement and his alleged substantial performance. Attached to the complaint was a handwritten letter from the late Mr. Boisso to Mr. Porter dated July 17, 2001, that included references to a mortgage, an interest rate, and a principal balance.[1] CP (No.

---

[1] The text of the handwritten note is included in an appendix to this opinion.

318095) at 34-35. Mr. Porter's prayer for relief sought a declaratory judgment specifying his right and interest in the property and an order compelling specific performance; alternatively, he sought damages for unjust enrichment.

The estate moved to dismiss the complaint, arguing that venue and jurisdiction were improper. After hearing argument, the Pierce County court initially stayed proceedings, later entertaining a motion by Mr. Porter for change of venue to Kittitas County. It eventually entered an order "Transferring Venue and Jurisdiction" to Kittitas County on May 3, 2013. CP (No. 318095) at 231-33.

Meanwhile, the estate had filed a petition in the Kittitas County probate proceeding for an order clearing title to the Pierce County properties. It argued that by filing his complaint in Pierce County, Mr. Porter failed to file suit in "the proper court" and was forever barred from asserting a claim. As further support for the requested relief, it argued that Mr. Porter had no contract right to purchase the Pierce County property but instead had been a tenant paying rent, attaching a 1999 rental agreement signed by Mr. Porter as support. After hearing from the parties, the court granted the relief requested by the estate on the basis that Mr. Porter failed to file a complaint in Kittitas County and, by statute, his claims were barred. It did not address whether the late Mr. Boisso and Mr. Porter had entered into a real estate purchase and sale agreement.

In May 2013, the estate filed a motion to dismiss Mr. Porter's complaint on collateral estoppel grounds, arguing that the issues presented had been litigated and

4

resolved against Mr. Porter through the quiet title proceeding. The court granted the estate's motion and dismissed Mr. Porter's complaint with prejudice. It awarded the estate attorney fees in the probate action and costs in both proceedings, for a total of $29,942.

Mr. Porter appeals orders and final judgments entered in both proceedings.

## ANALYSIS

Washington's nonclaim statute, RCW 11.40.010, provides that "[a] person having a claim against the decedent may not maintain an action on the claim unless . . . the claimant has presented the claim as set forth in this chapter." Once a claim is filed, the personal representative shall allow or reject each claim, failing which the statute allows the claimant to petition the court for a hearing to determine whether the claim should be allowed or rejected. RCW 11.40.080.

Where, as here, a creditor's claim is rejected by the personal representative, RCW 11.40.100(1) provides that "the claimant must bring suit against the personal representative within thirty days after notification of rejection or the claim is forever barred." It goes on to provide that the personal representative's notification of rejection

> must advise the claimant that the claimant must bring suit in the *proper court* against the personal representative within thirty days after notification of rejection or the claim will be forever barred.

*Id.* (emphasis added).

5

Mr. Porter assigns error to the court's judgment quieting title to the Pierce County

properties in the estate, arguing that his claims asserted in the Pierce County action are

not claims against a decedent subject to the nonclaim statute and, alternatively, that his

commencement of the Pierce County action satisfied the requirement that he timely file

suit in "the proper court."[2]

We first address whether the claims asserted by Mr. Porter in Pierce County were

subject to the nonclaim statute. Finding that at least one of them was, we turn to whether

commencement of his action in Pierce County satisfied a requirement that he timely bring

action in "the proper court."

*I. Mr. Porter's principal claims are not "claims against a decedent"*

Chapter 11.40 RCW does not define the meaning of "claim against the decedent"

as used in the nonclaim statute. In *Estate of Earls*, 164 Wn. App. 447, 448, 262 P.3d 832

(2011), our court stated that the nonclaim statute "encompasses every species of liability

a personal representative can be called upon to pay out of the estate's general funds."

Another recent decision of our court held that "'[t]o constitute a *claim against the estate*

*of a deceased person*, an obligation must consist of a *debt* incurred by or for the decedent

---

[2] Mr. Porter also assigns error on the basis that his filing of the Pierce County action "tolled" the 30-day limitation period and that the superior court erred in applying claim and issue preclusion to dismiss his complaint. Given our decision on the other errors identified, a "tolling" analysis does not apply and reversal of the trial court's decision dismissing Mr. Porter's complaint is automatic. We do not address those assignments of error further.

during his lifetime.'" *Witt v. Young*, 168 Wn. App. 211, 218, 275 P.3d 1218 (2012) (internal quotation marks omitted) (quoting *Olsen v. Roberts*, 42 Wn.2d 862, 865-66, 259 P.2d 418 (1953)).

Mr. Porter argues that the claims asserted in his Pierce County action were not claims against a decedent because he was seeking recognition of his interest in the property and enforcement of a right to complete the purchase.

With respect to his claims for declaratory relief and specific performance, a number of Washington cases support Mr. Porter's position. In *Baird v. Knutzen*, 49 Wn.2d 308, 310, 301 P.2d 375 (1956), the Bairds had granted a three-year logging easement to the Knutzens in exchange for an annual rental and an agreement that the Knutzens would convey 80 acres of the logged timberland to the Bairds at the conclusion of the three-year term. The Knutzens used the easement for the three years but failed to pay the full amount of rent and failed to convey the 80 acres. Ms. Knutzen died thereafter. The Bairds later sued, seeking specific performance of the obligation to convey the 80 acres. They were met by the defense that they had failed to file a creditor's claim in the probate proceedings of Ms. Knutzen's estate as required by former RCW 11.40.010 (REM. REV. STAT. § 1477 (Supp. 1923)). The court affirmed the trial court's order for specific performance finding that "[a]n action for specific performance of a contract is not within the purview of the statute." *Baird*, 49 Wn.2d at 310 (citing *Southwick v. Southwick*, 34 Wn.2d 464, 208 P.2d 1187 (1949)).

7

In *O'Steen v. Estate of Wineberg*, 30 Wn. App. 923, 934, 640 P.2d 28 (1982), Wineberg had agreed to give O'Steen ten percent of his stock in a petroleum company in satisfaction of a debt, but title to the shares was never transferred. When Wineberg's wife died, all of the shares were inventoried as community property in her estate. O'Steen filed no creditor's claim. The court held that his subsequent lawsuit was not barred by the nonclaim statute, because "RCW 11.40.010 applies only where the claim is a general charge against the assets of the estate. It does not apply where the claim is for specific property in the estate." *Id.* at 934 (citing *Compton v. Westerman*, 150 Wash. 391, 273 P. 524 (1928)).

In *Compton*, the court held the nonclaim statute did not apply to a party's request for the return of property given as collateral where the secured obligation had been satisfied, explaining:

> It does not seem to us that the statute of nonclaim has any application to the facts in this case. The respondent is not seeking to recover anything from the assets of the estate. She is not depleting the estate in any way. The property which was awarded to her did not belong to the estate, and no money judgment of any character was sought. Respondent is simply defending an action brought by the estate to recover money from her as executrix.
>
> The general rule is that the cestui que trust, for whom the defendant was in his lifetime a trustee, does not have to make a claim against the estate as long as the particular property he is claiming can be identified, and is not in any way commingled with the assets of the estate, the theory being that he is not depleting the estate, and is not claiming anything which belongs to the estate. He is merely claiming his own property. Woerner American Law of Administration, Vol. 3, § 402. Many authorities

8

approving the rule are quoted with approval in *Davis v. Shepard*, 135 Wash. 124, 237 P. 21[(1928), 41 A. L. R. 163].

*Compton* 150 Wash. at 396-97 (emphasis omitted). Several other cases hold that a party who asserts an interest in property that might otherwise be inventoried as part of the estate is not asserting a creditor's claim required to be filed under the nonclaim statute. *See Witt*, 168 Wn. App. at 218 (party claiming a community property-like interest resulting from a meretricious relationship was not asserting a claim subject to chapter 11.40 RCW); *Olsen*, 42 Wn.2d at 865-66 (tenant in common asserting an ownership interest in property is not a creditor); *Smith v. McLaren*, 58 Wn.2d 907, 909, 365 P.2d 331 (1961) (filing of a creditor's claim is not a condition precedent to an action by a former spouse to recover his or her share of community property).

In this case we are dealing with an alleged real estate contract. Washington cases recognize that a vendee under a real estate contract has a "'valid and subsisting interest in property.'" *Cascade Sec. Bank v. Butler*, 88 Wn.2d 777, 781-83, 567 P.2d 631 (1977) (quoting *Griffith v. Whittier*, 37 Wn.2d 351, 353, 223 P.2d 1062 (1950)); *Oliver v. McEachran*, 149 Wash. 433, 438, 271 P. 93 (1928) ("Undoubtedly such purchaser does have a right of possession and a right to acquire title in accordance with the terms of the contract."). In a 1992 decision, the Washington Supreme Court quoted with approval a bankruptcy court's observation that "'Washington law considers the purchaser's interest under the real estate contract as a property interest and the seller's interest under that

contract as a lien-type security device.'" *Tomlinson v. Clarke*, 118 Wn.2d 498, 509, 825

P.2d 706 (1992) (quoting *In re McDaniel*, 89 B.R. 861, 869 (Bankr. E.D. Wash. 1988)).

For probate purposes, Washington cases recognize that the *vendor*'s interest under such a

contract is personal property rather than real property. *In re Fields' Estate*, 141 Wash.

526, 528, 252 P. 534 (1927) (holding that because decedent's vendor's interest was

personal property, it did not pass to appellants); *In re Eilermann's Estate*, 179 Wash. 15,

19, 35 P.2d 763 (1934) (because vendor's interest in a real estate contract is personal

property, it is taxable in the state of the owner's domicile, not the state wherein the land

lies).

Mr. Porter's claims for specific performance and declaratory judgment asserted his

property interest as vendee under an alleged real estate contract. He was seeking to

ensure that the estate properly excluded the Pierce County parcels from its inventory,

recognized the personal property character of the vendor's interest held by Mr. Boisso at

the time of his death, and honored Mr. Porter's right to acquire title in accordance with

the terms of his alleged agreement with Mr. Boisso. Mr. Porter was proposing to *pay*

money, not to collect a debt incurred by Mr. Boisso during his lifetime. Consistent with

the foregoing case law, Mr. Porter's claims for specific performance and declaratory

judgment were not claims against a decedent within the meaning of the nonclaim statute.

As an alternative to his claims for specific performance and declaratory judgment,

however, Mr. Porter's Pierce County complaint asserted a restitution claim:

> Alternatively, the plaintiff is entitled to damages for unjust enrichment because he has continually resided on the property from 1999 to the present date and has expended thousands of dollars in maintaining and improving the property, all of which expenditures and improvements were made with the full knowledge of Charles Boisso.

CP (318095) at 24. His prayer for relief included the alternative of "a judgment for damages for unjust enrichment in an amount to be fully proven at trial." *Id.* at 25. The unjust enrichment claim is not inconsequential. The estate contends that Mr. Porter's alleged agreement with Mr. Boisso fails to comply with the statute of frauds. If Mr. Porter is unable to demonstrate facts entitling him to specific performance despite noncompliance with the statute of frauds, restitution is his sole remaining claim.

A claim for unjust enrichment is, within the language of our Supreme Court's decision in *Earls*, 164 Wn. App. 447, a "species of liability a personal representative can be called upon to pay out of the estate's general funds" and thereby a "claim against the decedent" within the meaning of RCW 11.40. We therefore turn to whether Mr. Porter brought suit on his unjust enrichment claim in "the proper court."

## II. *The superior court is the proper court*

RCW 11.40.100(1) does not itself create a requirement that a creditor with a claim against the estate file its post-rejection lawsuit in "the proper court." Rather, it requires the personal representative to advise the claimant that it must bring suit in "the proper court." The estate has collapsed language in the statute into a singular requirement that a claimant "bring suit against the personal representative ***within thirty days . . . in the***

11

***proper court*** ... or the claim will be forever barred." Br. of Resp't at 1. But the

requirement that the claimant timely file suit and the requirement that the personal

representative warn the claimant are distinct and appear several sentences apart in the

applicable subsection of the nonclaim statute. The subsection reads in its entirety:

> *If the personal representative rejects a claim, in whole or in part, the
> claimant must bring suit against the personal representative within thirty
> days after notification of rejection or the claim is forever barred.* The
> personal representative shall notify the claimant of the rejection and file an
> affidavit with the court showing the notification and the date of the
> notification. The personal representative shall notify the claimant of the
> rejection by personal service or certified mail addressed to the claimant or
> the claimant's agent, if applicable, at the address stated in the claim. The
> date of service or of the postmark is the date of notification. *The
> notification must advise the claimant that the claimant must bring suit in
> the proper court against the personal representative within thirty days after
> notification of rejection or the claim will be forever barred.*

RCW 11.40.100(1) (emphasis added).

Plainly read, the statute recognizes that a proper court exists and that the claimant

must be warned about it, but it says nothing about which court is proper. Determining

"the proper court" requires us to review other sources of law.

"Subject matter jurisdiction is a tribunal's authority to adjudicate the type of

controversy involved in the action." *Shoop v. Kittitas County*, 108 Wn. App. 388, 393,

30 P.3d 529 (2001). "Venue rules serve to limit a plaintiff's choice of forum to ensure

that the locality of a lawsuit has some logical relationship to the litigants or the subject

12

matter of the dispute." *Id.* at 396 (citing JACK H. FRIEDENTHAL, MARY KAY KANE & ARTHUR R. MILLER, CIVIL PROCEDURE § 2.1 at 9-10 (3d Ed. 1999)).

Our state constitution provides, "The superior court shall have original jurisdiction in all cases at law which involve . . . all matters of probate." CONST. art. IV, § 6. It further provides that "[t]he superior court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court." *Id.*[3] The Washington Supreme Court has interpreted this language as giving to the superior court "'universal original jurisdiction,'" thereby preventing the legislature from limiting subject matter jurisdiction as among superior courts located in different counties. *Ralph*, 182 Wn.2d at 252 (quoting *Moore v. Perrott*, 2 Wash. 1, 4, 25 P. 906 (1891)).

In 1999, the legislature adopted the Trust and Estate Dispute Resolution Act (TEDRA) for the stated purpose of "set[ting] forth generally applicable statutory provisions for the resolution of disputes and other matters involving trusts and estates in a single chapter under Title 11 RCW." RCW 11.96A.010. TEDRA includes both a

---

[3] The estate has suggested that use of the definite article "the" unambiguously refers to a single court, implying that it must refer to a superior court in a particular county. Br. of Resp't at 12-13. But both the constitution and the relevant statutes speak predominantly, if not exclusively, of "the superior court" as a single court that has a presence in all counties. While Washington laws also sometimes speak of multiple "superior courts," then, it is entirely reasonable to construe "the proper court" as referring to the single, statewide superior court recognized in the state constitution.

jurisdiction and a venue provision. The jurisdiction provision provides that "[t]he superior court of every county has original subject matter jurisdiction over the probate of wills and the administration of estates of incapacitated, missing, and deceased individuals in all instances." RCW 11.96A.040(1). It also provides

> [t]he subject matter jurisdiction of the superior court applies without regard to venue. A proceeding or action by or before a superior court is not defective or invalid because of the selected venue if the court has jurisdiction of the subject matter of the action.

RCW 11.96A.040(4).

TEDRA's venue provision provides that the original venue for proceedings pertaining to the probate of wills and most other estate administration matters is "in any county of the state of Washington that the petitioner selects," subject to a party's right to make a timely request to change venue to a county given priority by statute. RCW 11.96A.050(4). "Once letters testamentary or of administration have been granted in the state of Washington," however, "all orders, settlements, trials, and other proceedings under this title must be had or made in the county in which such letters have been granted unless venue is moved as provided in [RCW 11.96.050(4)]." RCW 11.96A.050(5).

The general provisions regarding venue and jurisdiction in Washington courts appear in chapter 4.12 RCW. RCW 4.12.030 identifies grounds for changing the venue of an action, including "[t]hat the county designated in the complaint is not the proper county." RCW 4.12.030(1). Where a motion for change of venue on the basis that the

14

action has been brought in the wrong county is allowed, "the change shall be made to the county where the action ought to have been commenced." RCW 4.12.060. As our Supreme Court recently observed in *Ralph*, "RCW 4.12.030(1) contemplates that actions will inevitably be filed in the wrong county and RCW 4.12.060 authorizes moving an improperly filed action 'to the county where the action ought to have been commenced.'" *Ralph*, 182 Wn.2d at 255 (emphasis omitted) (quoting RCW 4.12.060). Absent a request for a change of venue, an action brought in the wrong county "may nevertheless be tried therein unless the defendant, pursuant to the provisions of rule 12, requests that the trial be held in the proper county and files an affidavit of merits." CR 82(b).

At least two Washington cases have held, directly or indirectly, that "the proper court" in which a person having a claim against a decedent must bring suit is the superior court. In *McWhorter v. Bush*, 7 Wn. App. 831, 502 P.2d 1224 (1972), the executor of an estate appealed from the allowance of a claim that the executor contended had been pursued by improperly asserting an action in the existing probate rather than filing a separate civil action. The facts in *McWhorter* were more compelling than those in the present case—unlike the venue of an action, which can be wrong but is subject to waiver or correction, the procedure followed in *McWhorter* was unquestionably wrong under existing case law requiring the commencement of a separate civil action. 7 Wn. App. at 832 (citing *Rutter v. Rutter*, 59 Wn.2d 781, 784, 370 P.2d 862 (1962); *Schluneger v. Seattle First-Nat'l Bank*, 48 Wn.2d 188, 190, 292 P.2d 203 (1956)). Still, this court held

15

that the superior court was "the proper court" and whatever mistakes had been made, the claim had been pursued in the superior court:

> [Former] RCW 11.40.60 requires that suits upon rejected claims be brought "in the proper court" within 30 days of notice of rejection. The "proper court" in this instance is the superior court; this probate and the actions on the rejected claims were filed in the superior court. . . . Probate proceedings are properly within the jurisdiction of the superior court.

*McWhorter*, 7 Wn. App. at 832-22 (footnote omitted).

An earlier case, *Stell Co. v. Smith*, 16 Wn.2d 388, 398, 133 P.2d 811 (1943), recognized that filing suit against an estate in the wrong county was inconsequential. The Supreme Court was presented with an argument that a creditor's action "should have been brought in superior court for Grant county, the probate forum, instead of being instituted in superior court for Chelan county." *Id.* It rejected the argument, in part for the reason that "if the action was commenced in the wrong county, venue to Grant county could have been changed upon respondent's motion therefor." *Id.*

We hold that under the Washington Constitution and statutes, then, "the proper court" in which a person having a claim against a decedent is to bring suit is the superior court.

The estate argues that even if "the proper court" under the nonclaim statute is the superior court, "judicial admissions" estop Mr. Porter from arguing that jurisdiction was proper in Pierce County. Resp't's Br. at 30. It points specifically to the "Order Transferring Venue and Jurisdiction to Kittitas County," and its finding that the "action

16

[is] of a nature that requires change of venue and jurisdiction to Kittitas County." Br. of

Resp't at 30. It relies on *Mukilteo Retirement Apartments v. Mukilteo Investors LP*, 176

Wn. App. 244, 256 n.8, 310 P.3d 814 (2013).

*Mukilteo Retirement Apartments* deals with judicial admissions that are made in a

party's answer, are never deleted by amendment, and are the basis on which a case is

tried. It is clearly inapposite. More importantly, language in the Pierce County court's

order is not inconsistent with the position Mr. Porter was taking at the time. While it is

now clear from the Supreme Court's decision in *Ralph* that the Pierce County court was

not transferring jurisdiction, the concept of transferring jurisdiction was consistent with

Mr. Porter's belief in 2013 that he was required by RCW 4.12.010(1) to file his post-

rejection lawsuit in Pierce County as the only county with subject matter jurisdiction.

Until abrogated by *Ralph*, Washington decisions had held that as long as an action

involving title to real property was brought in the county in which the property was

located, the superior court in that proper county could "confer" its jurisdiction over a

properly commenced action upon transferring the action to another court. *Ralph*, 182

Wn.2d at 255 (citing cases).

Mr. Porter filed his post-rejection lawsuit in the proper court.

### III.    Conclusion and attorney fees

For the foregoing reasons, the trial court erred in treating Mr. Porter as having

failed to timely bring suit under the nonclaim statute and in quieting title in the Pierce

17

County properties in the Boisso estate. It necessarily erred in applying its judgment in the probate action as collateral estoppel and, on that basis, dismissing the claims of Mr. Porter that had been transferred to Kittitas County by the Pierce County Superior Court. The court's finding that the estate was the prevailing party in the probate proceeding for purposes of awarding attorney fees was an abuse of discretion.

Both parties request an award of attorney fees on appeal under RCW 11.96A.150. The estate additionally requests an award of fees under RAP 18.9, which authorizes us to require a party to pay the opposing party's reasonable attorney fees and costs if an appeal is frivolous. Needless to say, Mr. Porter's appeal was not frivolous.

RCW 11.96A.150 provides that we may, in our discretion

order costs, including reasonable attorneys' fees, to be awarded to any party: (a) From any party to the proceedings; (b) from the assets of the estate or trust involved in the proceedings; or (c) from any nonprobate asset that is the subject of the proceedings. The court may order the costs, including reasonable attorneys' fees, to be paid in such amount and in such manner as the court determines to be equitable. In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved.

Having considered the statutory factors, we decline to award attorney fees and costs on appeal to either party.

We vacate the final judgments in both actions; reverse the trial court's orders clearing title, dismissing Mr. Porter's complaint with prejudice, and awarding attorney

fees and costs to the estate; and remand for further proceedings consistent with this opinion.

_____
Siddoway, C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Fearing, J.

APPENDIX

July 17, 01

hi Kevin

I found the copy of the title

finally—huh! I dated 7/26/01

Thanks for the payment last month!

I calculated what the monthly interest

will be on the mortgage for the remaining balance of

$106,950 using

8.25% interest rate.  Current rate

with good credit is around 7.25%

People I've talked to say owner

who holds the paper should ask

2-3% above bank rate, to

help cover the risk.  I'm asking 8.25%

The yearly interest will be $8819.00

monthly it will be $734.33

so you'll need to pay $734.33 interest

a month plus principal.

I've been taking all money

given to me off the principal / no interest.

I'd really like to see a

little more money monthly around the

20th-25th so it's more regular

and closer to the interest plus

20

No. 31805-2-III (consolidated with No. 31809-5-III)
*Porter v. Boisso*
Appendix

principal amount when we
do the paper work.  I'll continue
to take total amount off principal
until we sign.

~~1-360-8~~ 1-509-933-1913
Charles
(BONNIVILLE)
Also the bonneville power co.
will be marking and cutting
dangerous trees on the front near
the lines 6/10/01
See ya soon —

CP (No. 318095) at 34-35.